UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| STEPHANIE RUSSELL, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> HON. DENISE BROWN, in her capacity as ) <br> Circuit Court Judge, Family Court Division ) <br> ) <br> Defendant. ) | Civil Action No. 3:20-CV-811-CHB <br><br> **MEMORANDUM OPINION AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Honorable Denise Brown's ("Brown") Motion to Dismiss. [R. 7]. Plaintiff Stephanie Russell ("Russell") filed a Response, [R. 11], and Brown replied. [R. 12]. This matter is now ripe for decision. For the following reasons, the Court grants Brown's Motion to Dismiss.

**I.      BACKGROUND**

Stephanie Russell is a Louisville-based pediatrician and the mother of two minor children, ages two and four. [R. 1, ¶¶ 6, 21]. Russell and Ricky Crabtree, the father of the two children, are engaged in child custody proceedings ("Family Court Action") to determine issues of custody, parenting time, child support, and other related issues. *Id*. at ¶¶ 6–7. Brown presides over the Family Court Action. *Id*. at ¶ 3.

The procedural history of the Family Court Action is critical to this matter. First, Brown appointed a Guardian Ad Litem ("GAL") to represent the interest of the children and a custodial evaluator to assess the custodial issues between Russell and Crabtree. *Id*. at ¶ 10. Then, on June 29, 2020, the GAL filed a motion to award immediate temporary sole custody of the children to Crabtree. *Id*. at ¶ 19. That same day, Brown conducted a twenty-minute Zoom hearing with Russell's counsel present to argue the motion. *Id*. at ¶¶ 22–23. Russell's counsel objected during

the proceeding. *Id*. at ¶ 23. Finally, Brown entered an order granting the GAL's motion and awarded temporary sole custody of the children to Crabtree on July 1, 2020 ("July 1, 2020 Order"). *Id*. at ¶ 24. Brown's order suspended Russell's parenting rights and limited Russell solely to supervised digital contact through a third-party known as Children's Safe Haven. *Id*.

After the July 1, 2020 Order, Russell filed two motions with the Kentucky Supreme Court asking to remove Brown from the Family Court Action, and one motion with Brown herself seeking recusal. *Id*. at ¶ 27. Each motion was denied. *Id*.

With this procedural history exhausted, the Western District of Kentucky's story begins. On December 4, 2020, Russell filed a federal complaint ("Complaint") with the Court, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201, seeking a declaration that Brown, in her official capacity, violated her constitutional due process rights under the Fourteenth Amendment to the United States Constitution. *Id*. at ¶ 5. Russell alleges both procedural and substantive due process violations. *Id*. According to the Complaint, Russell's deprivations arise from:

> a. Judge Brown's failure and/or refusal to furnish Plaintiff and her attorney proper and timely notice of the Proceeding on June 29, 2020 which led to the entry of the July 1, 2020 Order Referenced above;
> b. Judge Brown's failure and/or refusal to allow Plaintiff and her attorney adequate time in which to prepare for the Proceeding on June 29, 2020 which led to the entry of the July 1, 2020 Order referenced above;
> c. Judge Brown's failure and/or refusal to afford Plaintiff a full and formal adjudicatory hearing on GAL's motion to award temporary custody to Crabtree, which motion, absent said full and formal adjudicatory hearing as required by law, resulted in the award of temporary custody to Crabtree and termination of Plaintiff's in-person contact with her Children;
> d. Judge Brown's entry of the July 1, 2020 Order despite having refused and/or failed to afford Plaintiff a full and formal adjudicatory hearing on the GAL's motion to terminate Plaintiff's parenting time with children, which motion, absent said full and formal adjudicatory hearing as required by law, resulted in the July 1, 2020 Order which suspended Plaintiff's in-person parenting time and directed that Plaintiff could only have contact with the Children via supervised digital contact through CSH.

2

*Id*. at ¶ 29. She also alleges that Brown failed to make specific findings and conclusions of law that supported her decision in the July 1, 2020 Order. *Id.* at ¶ 28.

Finally, Russell's Complaint alleges that Brown violated Russell's rights under the First Amendment to the U.S. Constitution. *Id*. at ¶ 5. Russell describes Brown as a "prolific" social media user and highlights the fact that Brown identifies herself on one or more of her social media accounts as a Jefferson Family Court Judge. *Id*. at ¶ 30. The day Russell filed her Complaint, Brown had blocked Russell's access to Brown's personal Instagram page and Twitter account. *Id*. at ¶ 31. Further, Russell claims she has been blocked from Brown's personal Facebook Page in the past. *Id.* According to Russell, these actions constitute a "deprivation of [her] rights under the First Amendment to the United States' Constitution, also by a state actor, Judge Brown, under color of state law." *Id*. at ¶ 33.

## II.     STANDARD OF REVIEW

A pleading that states a claim for relief "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pleadings require plausible allegations. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 557 (2007). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When a complaint is attacked by a 12(b)(6) motion to dismiss, the court must "construe [the] complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of [their] claim that would entitle . . . relief." *Hall v. Callahan*, 727 F.3d 450, 453 (6th Cir. 2013). However, these principles are inapplicable to legal conclusions. *Ashcroft*, 556 U.S. at

678. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "shown"— "that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

### III. ANALYSIS

#### A. *Rooker-Feldman*

The parties' dispute the applicability of the *Rooker-Feldman* doctrine. Brown argues the Court lacks subject matter jurisdiction over this matter pursuant to *Rooker-Feldman*. [R. 7, p. 6]. According to Brown, Russell's requested relief "is effectively an invitation for this Court to review the state court's decision." *Id.* at 7. Russell disagrees. [R. 11, p. 6–7]. She argues that *Rooker-Feldman* is inapplicable because her due process claims are independent of the state court decision. *Id.* at 7.

Federal law empowers only the Supreme Court to review "final judgments or decrees rendered by the highest court of a State." 28 U.S.C. § 1257. The negative implication of § 1257 is that lower federal courts lack jurisdiction to review state court judgments. This is known as the *Rooker-Feldman* doctrine.

The Supreme Court has confined *Rooker-Feldman* to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and *inviting district court review* and *rejection of those judgments*." *Exxon Mobil Corp. v. Saudi Basic Indust. Corp.*, 544 U.S. 280, 284 (2005) (emphasis added). Stated differently, *Rooker-Feldman* prevents a state-court loser from circumventing the state's judgment through federal review. It, however, does not deny a federal court jurisdiction over a federal claim independent of a state-court judgment. *See id.* at 293.

Determining when a plaintiff seeks review of a state-court judgment versus when a plaintiff presents a federal claim independent of a state-court judgment can be difficult, and this precise distinction is the heart of the parties' dispute. In *RLR Investment, LLC v. City of Pigeon Forge, Tennessee*, 4 F.4th 380 (6th Cir. 2021), the Sixth Circuit clarified the *Rooker-Feldman* analysis. *See id*. at 388. The specific question before the panel was whether *Rooker-Feldman* still applied to interlocutory orders in light of the Supreme Court's decision in *Exxon Mobil*. *Id.* at 386. The Sixth Circuit answered that question affirmatively declaring that *Exxon Mobil* and circuit precedent applying *Rooker-Feldman* to interlocutory orders "comfortably coexist[ed]." *Id*. at 392. For this Court's purposes, *RLR Investment* provides the test for determining when a plaintiff seeks *review* of a state-court judgment. The Sixth Circuit directs a court to "determine whether a plaintiff seeks review of a state-court judgment by looking at the '*source of the injury* the plaintiff alleges in the federal complaint and consider what relief the plaintiff requests.'" *Id*. at 388 (emphasis added) (citations omitted). Importantly, the state and federal claims need not be identical for *Rooker-Feldman* to apply. *Id.* But if the source of injury is not the state-court judgment, then the district court has jurisdiction over the claim. *Id.*

Instead of using the "source of injury" test, the parties frame their *Rooker-Feldman* analysis using the "inextricably intertwined" standard found in *Catz v. Chalker*, 142 F.3d 279 (6th Cir. 1998), *abrogated by Coles v. Granville*, 448 F.3d 853 (6th Cir. 2006). There, the Sixth Circuit stated that for *Rooker-Feldman* to apply to a federal claim, the issue before the court "must be 'inextricably intertwined' with the claim asserted in the state court proceeding." *Id.* at 293. But "inextricably intertwined" proved difficult to define. The slippery language helped trigger a broad expansion of *Rooker-Feldman* in the lower courts and compelled the Supreme Court to clarify the doctrine's narrow reach in *Exxon Mobil*. *McCormick v. Braverman*, 451 F.3d

382, 394 (6th Cir. 2006) ("[Inextricably intertwined] was [the] exact language that was the source of the pre-*Exxon Mobil* woes as to the application of *Rooker-Feldman*."). In doing so, the Supreme Court implicitly repudiated inextricably intertwined. *Exxon Mobil*, 544 U.S. at 291–93. Following *Exxon Mobil*, the Sixth Circuit explained that in the context of *Rooker-Feldman* the phrase "only describes the conclusion that a claim asserts an injury whose source is the state court judgment." *McCormick*, 451 F.3d at 393–95. Thus, when reviewing the Parties' briefs, the Court construes "inextricably intertwined" to recapture the "source of injury" inquiry. Pursuant to *RLR Investment*, the balance of the Court's *Rooker-Feldman* analysis examines the source of injury for Russell's Complaint and her requested relief.

   First, the source of injury in Russell's Complaint is Brown's July 1, 2020 Order granting the GAL's motion and awarding temporary sole custody of the children to Crabtree. *Rooker-Feldman* precludes federal court jurisdiction where the claim is a "specific grievance that the law was invalidly — even unconstitutionally —applied in the plaintiff's particular case." *Kafele v. Lerner, Sampson & Rothfuss, L.P.A.*, 161 F. App'x 487, 489–90 (6th Cir. 2005). Russell's Complaint alleges Brown denied her due process by, among other things, "Judge Brown's entry of the July 1, 2020 Order . . ." [R. 1, ¶ 29]. While Russell falls short of directly asking the Court to overturn the state-court order, she seeks an end-around by asking this Court to review the state-court process. *Id.* But the end result is the same. That is, this Court cannot grant the relief Russell requests without determining that Brown "invalidly — even unconstitutionally — applied [Kentucky state] law in [Russell's] particular case" when granting the GAL's motion for temporary custody. *Kafele*, 161 F. App'x at 489–90. A declaration by the Court that Brown's entry of the July 1, 2020 Order lacked due process, and consequently, was unconstitutional, "disturbs" the state-court judgment. *Hall*, 727 F.3d at 453. Importantly, Russell's requested

6

declaration would require the Court function as an appellate authority for a decision of a state court, which is prohibited. *Id.* at 453; *Exxon Mobil*, 544 U.S. at 292. Thus, the Court's inability to grant Russell's relief without directly affecting the state-court order demonstrates that Russell's source of injury is not merely related to the state-court proceedings, but her source of injury is the state-court order itself that resulted from those proceedings.

Russell cannot evade *Rooker-Feldman* by disguising her source of injury as due process violations. There is no due process exemption to *Rooker-Feldman*. *Raymond v. Moyer*, 501 F.3d 548, 553 (6th Cir. 2007) (rejecting the argument that *Rooker-Feldman* is inapplicable when state-proceedings offer little process); *Postma v. First Fed. Sav. & Loan of Sioux City*, 74 F.3d 160, 162 n.3 (8th Cir. 1996) (collecting cases and concluding "there is no procedural due process exception to the *Rooker–Feldman* doctrine"); *see generally D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 478 (1983) (explaining the form of the state-court proceeding is not significant, but only its nature and effect which is controlling). If the Court were to construe the *Rooker-Feldman* doctrine to grant an unrestrained privilege to review state-court decisions for procedural errors, the result would aggrandize the lower federal court's jurisdiction to rival, if not supersede, the Supreme Court's. *See Hall*, 727 F.3d at 454. Not only would such a decision ignore the Court's statutorily defined jurisdictional limit, but it would also frustrate firmly held principles of federalism and comity, which *Rooker-Feldman* is based upon. *Gilbert v. Ferry*, 401 F.3d 411, 418 (6th Cir. 2005); *see also U.S. v. Owens*, 54 F.3d. 271, 274 (6th Cir. 1995).

Russell contends that her claims are independent of the state-court judgment and mirror those in *Todd v. Weltman, Weinberg & Reis Co., LPA*, 434 F.3d 432 (6th Cir. 2006). [R. 11, p. 18]. There, the plaintiff defaulted on a loan and the defendant brought suit on behalf of the

creditor. *Id*. at 435. Subsequently, the defendant initiated proceedings to garnish the plaintiff's bank account. *Id.* To do so, pursuant to Ohio law, the defendant had to file an affidavit stating a reasonable basis to believe the person named in the affidavit as the garnishee may have property, other than personal earnings, of the judgment debtor that is not exempt under state law or law of the United States. *Id*. Defendant submitted the affidavit to the state court claiming that none of the plaintiff's property was exempt. *Id.* However, days prior to the defendant's affidavit submission, plaintiff requested a hearing to contend that the funds in his bank account were exempt because they derived from his Social Security benefits and his wife's short-term disability benefits. *Id.* Regarding the affidavit itself, state court found it valid and froze the funds in the plaintiff's bank account. *Id*. Days later, the state court held that plaintiff's funds were exempt by law. *Id.* As a result, the plaintiff filed a complaint against the defendant in the Southern District of Ohio alleging the defendant violated the Fair Debt Collection Practice Act by "filing a false statement to obtain a garnishment order in state court." *Van Hoven v. Buckles & Buckles, P.L.C.*, 947 F.3d 889, 893 (2020) (explaining the decision in *Todd*). On appeal, the Sixth Circuit held that *Rooker-Feldman* did not apply because the plaintiff's injuries stemmed from the defendant's filing of a false affidavit, not the state-court judgment that froze the plaintiff's funds. *See Todd*, 434 F.3d at 437.

The plaintiff in *Todd* would have suffered a cognizable injury even if there was no state-court order on the matter. Russell's claimed injury, however, is the byproduct from her loss in state court, and her federal claims were filed after her defeats in the state-system. *See* [R. 1, ¶ 27]. According to the Complaint, Brown's actions, including the entry of the July 1, 2020 order, caused Russell's harm. *Id*. at ¶ 29. The source of injury is a state-court judgment when

8

"the count alleges that the state court order itself was illegal and harmed Plaintiff." *Lawrence v. Welch*, 531 F.3d 364, 369 (6th Cir. 2008) (citations omitted).

Russell's due process claims in essence ask the Court to find a "reasonable opportunity" exception to *Rooker-Feldman* when the Sixth Circuit has stated that no such thing exists. In *Abbott v. Michigan*, 474 F.3d 324 (6th Cir. 2007), the plaintiffs claimed they were denied a reasonable opportunity to litigate their claims in the state-court proceedings and as a result, *Rooker-Feldman* did not apply. *Id*. at 329. The Sixth Circuit disagreed holding that recent Supreme Court decisions, particularly *Exxon Mobil*, did not support a "reasonable opportunity" exception. *Id* at 330. Here, Russell argues that the twenty-minute hearing on the GAL's motion filed that same day failed to provide proper notice and prevented her counsel from adequately preparing. [R. 1, ¶ 29]. Russell implies that the procedures did not amount to a full and formal adjudicatory hearing, which she is owed. *Id*. Stated differently, Russell argues her opportunity to dispute the GAL's motion was unreasonable. Notwithstanding the merits of these contentions, the proper course of action for Russell is to exhaust the state-court system with appeals and then seek review by writ of certiorari from the United States Supreme Court. *Abbott*, 474 F.3d at 330. *Rooker-Feldman* prohibits Russell from seeking appellate review from this Court.

Second, Russell seeks backward-looking relief prohibited by *Rooker-Feldman*. The doctrine forbids challenges to state-court judgments; it does not bar "forward-looking," general challenges to the constitutionality of state court practices. *Brent v. Wayne County Department of Health Services*, 901 F.3d 656, 674 (6th Cir. 2018). Russell does not attack the constitutionality of a particular state law or the authority for the Family State Court Action, *see Howard v. Whitbeck*, 382 F.3d 633, 639 (6th Cir. 2004), nor does she raise a general challenge to the constitutionality of state law applied in the state action. *Hood v. Keller*, 341 F.3d 593, 597 (6th

9

Cir. 2003) (citations omitted). She does not attempt to "clear away" any unlawful state policies for future cases. *See Brent*, 901 F.3d at 674–75. Rather, Russell seeks a declaration by this Court finding Brown violated her due process rights in entering a specific order. Her Complaint, in fact, is entirely backward-looking, even failing to mention the current status of the on-going Family Court Action. Russell's focus lies solely on past grievances and Brown's "utter failures" in the Family Court Action. [R. 11, p. 17]. She argues that notice provided for the June 29, 2020 hearing was insufficient, the time given to prepare was inadequate, and the hearing was too short. [R. 1, ¶ 29]. It is these specific failures, according to the Complaint, that cost Russell temporary custody of her children. *Id*. at ¶¶ 5, 29. Any declaratory relief, therefore, would reach back into the past and declare Brown's conduct (and her order) as violating the Constitution. But *Rooker-Feldman* bars backward challenges to the application of the law in plaintiff's particular case that resulted in a specific grievance, and Russell has not alleged a plausible threat of any future deprivation that would allow the Court to construe the Complaint to comport with *Rooker-Feldman*. *Kafele*, 161 F. App'x at 489–90.

### B. *Younger* Abstention

Even if *Rooker-Feldman* were inapplicable and this Court had jurisdiction, the Court abstains from hearing this matter pursuant to the *Younger* abstention doctrine. *Younger* abstention counsels a federal court to abstain from adjudicating a matter properly before it in deference to certain ongoing state proceedings. *Tindall v. Wayne County Friend of Court*, 269 F.3d 533, 538 (6th Cir. 2001) (citing *Younger v. Harris*, 401 U.S. 37, 37–38 (1971)). The considerations that determine when abstention is appropriate are: (1) whether the underlying proceedings constitute an ongoing state judicial proceeding; (2) whether the proceedings implicate important state interests; and (3) whether there is an adequate opportunity in the state

proceedings to raise a constitutional challenge. *Id*. at 538. For *Younger* to apply, all three factors must be satisfied. *Doe v. Univ. of Kentucky*, 860 F.3d 365, 369 (6th Cir. 2017). In extraordinary circumstances when the *Younger* factors are met, a federal court may decline to abstain if a plaintiff can demonstrate "bad faith, harassment, flagrant unconstitutionality, or another unusual circumstance warranting equitable relief." *Id*.; *see also Fieger v. Thomas*, 74 F.3d 740, 750 (6th Cir. 1996).

As a preliminary matter, Russell contends *Younger* is inapplicable because "Brown is not a party to the underlying state court action; she is the presiding judge." [R. 11, p. 19]. However, the Sixth Circuit has held *Younger* to be applicable in similar cases. For example, in *Mann v. Conlin*, 22 F.3d 100 (6th Cir. 1994), the plaintiffs filed a § 1983 action against the Michigan judge who presided over the plaintiffs' domestic relations cases. *Id.* at 101. The Sixth Circuit affirmed the district court's application of *Younger*. Thus, the Court sees no merit in Russell's claim that *Younger* does not apply because Brown was not a party in the underlying action.

Application of the *Younger* factors in this matter favors abstention. First, the underlying Family Court Action was still pending the day Russell filed her federal claims. [R. 7 at 8]. For *Younger* purposes, whether a state proceeding is pending is determined on the day the federal claim is filed — the so-called "day-of-filing" rule. *Fed. Express Corp. v. Tenn. Pub. Serv. Comm'n*, 925 F.2d 962, 969 (6th Cir. 1991).

Second, the state proceedings involve a "paramount state interest," i.e. domestic relations. *Tindall*, 269 F.3d at 538. Russell disagrees arguing that her claims do not require the Court to determine state family law. However, a court need not determine state law to "implicate" important state interests, and a substantive review of Brown's ruling to determine any alleged due process violations necessarily implicates the integrity and functionality of the state's judicial

11

system when addressing domestic relations. *See Parker v. Turner*, 626 F.2d 1, 4 (6th Cir. 1980) ("[D]omestic relations . . . proceedings are traditionally of deep state concern."). The Court's decision is bolstered by *Younger*'s policy aims, mainly the desire not to disrupt the comity between federal and state court. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987). By abstaining, the Court properly allows the state to resolve that important to its interest.

Finally, the state court provides an adequate opportunity for Russell to raise her constitutional claims. The federal plaintiff carries the "burden . . . to show 'that state procedural law bar[s] presentation of [their] claims.'" *Pennzoil Co.*, 481 U.S. at 14 (citations omitted). Regarding this point, Russell makes two failing arguments. First, she contends that the long-drawn-out custody action provides Brown a continuing opportunity to deprive her of due process. [R. 11, p. 20]. Second, Russell argues she would have no appellate remedy to Brown's temporary ruling because it's "not a final and appealable order." *Id*. The first argument is flawed because *Younger* requires an *adequate opportunity* to raise a constitutional claim, but it doesn't require the timeliest opportunity. *See Aaron v. O'Connor*, 914 F.3d 1010, 1019 (6th Cir. 2019) (holding that the plaintiffs' opportunity to raise constitutional claims was not inadequate because it required the use of the appellate process, including a potential petition for a writ of certiorari in the U.S. Supreme Court). The second argument is flawed because Russell has already repeatedly invoked state interim measures to appeal Brown's decisions, *See* [R. 1, ¶ 27], and Russell concedes that she has appellate rights once the case is adjudicated. [R. 11, p. 20]; *See Shafizadeh v. Bowles*, 476 F. App'x 71, 73 (6th Cir. 2012) (concluding that there was "no dispute that the state appellate process gave [the plaintiff] an adequate opportunity to raise his grievances concerning [the judge presiding over his divorce in state court]"). Thus, Russell has failed to

12

show a state procedural law bar that prevents her from an adequate opportunity to present her claims.

In a last-ditch effort, Russell, in response to the Motion to Dismiss, urges the Court decline to apply *Younger* because of allegations regarding Brown's "bad faith and other extraordinary circumstances." [R. 11, p. 20]. Generally, courts "do . . . not consider facts or additional documents included in a response to a motion to dismiss that are not in the pleadings." *White v. Coventry Health & Life Ins. Co.*, No. 3:14-CV-00645-CRS, 2015 WL 6680908, at *2 (W.D. Ky. Nov. 2, 2015). Russell's allegations are not found in her Complaint and, therefore, this Court declines to consider them now.

In conclusion, assuming there is jurisdiction, the Court finds abstention proper in this matter. The state proceeding was still pending on the day Russell filed her federal claim. The matter regards domestic relations, an important state interest. Finally, Russell has an adequate opportunity to raise her constitutional claims on appeal.

### C. First Amendment

Russell's First Amendment claim turns on whether Brown's social media accounts implicate the state action doctrine pursuant to the First Amendment. Russell argues that Brown acted as a state actor when she blocked Russell from one or more of her social media accounts. [R. 1, ¶ 33]. Brown counters arguing that her social media accounts do not constitute a public forum. [R. 7, p. 14]. However, the Court need not address forum because it holds that Brown's conduct on her private social media accounts is that of a private citizen and outside the purview of the First Amendment.

The First Amendment applies to governmental actors and protects private actors. U.S. Const. amend. I. "It is undisputed that First and Fourteenth Amendment protections . . . are

triggered only in the presence of state action and that a private entity acting on its own cannot deprive a citizen of First Amendment rights." *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000) (citing *Flagg Brothers Inc. v. Brooks*, 436 U.S. 149 (1978)). The principal inquiry in determining whether a private party's actions constitute "state action" under the Fourteenth Amendment is whether the party's actions may be "fairly attributable to the state." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982)). Courts are to examine the "peculiar facts or circumstances present" and determine whether the private actions bore a "sufficiently close nexus" with the state to be "fairly treated as the state itself." *Wilcher v. City of Akron*, 498 F.3d 516, 520 (6th Cir. 2007). In the social media context, a court should focus on how the official describes and uses the accounts; to whom features of the account are made available; and how others, including government officials and agencies, regard and treat the account. *Knight First Amend. Inst. at Columbia Univ. v. Trump*, 928 F.3d 226, 237 (2d Cir. 2019), *vacated*, *Biden v. Knight First Amend. Inst. at Columbia Univ.*, 141 S. Ct. 1220 (2021).

Russell broadly states that "numerous federal courts have previously held that elected public officials, including but not limited to the [former] President of the United States himself, may not block citizens, in particular, citizens expressing critical views of that official's performance, from social media accounts maintained by those elected officials, and doing so, violates the First Amendment Rights of those citizens." [R. 1, ¶ 32]. To support this proposition, Russell cites the Second Circuit's decision in *Trump*. *Id.* But this matter is nothing like *Trump*. There, the issue arose from the President's decision to use a relatively new type of social media platform to conduct official business and to interact with the public. *Trump*, 928 F.3d at 230. Here, this Court is presented with a narrow question: can an official's private social media

account be "fairly attributable to the State" solely because the account lists the official's title? The answer is no.

In *Trump*, the Second Circuit concluded that President Donald J. Trump's Twitter was an official government account, implicating state action, even though it was created as a personal account well before President Trump assumed office. *Id.* at 235–37. According to the evidence, the twitter account was presented as belonging to, and operated by, the President. *Id.* at 235. Multiple members of the President's administration described the account as official. *Id.* at 230. President Trump used the twitter account on almost a daily basis to communicate with the public about his administration. *Id.* at 235. Finally, the National Archives, the agency of government responsible for maintaining the government's records, concluded the President's tweets were official records.

In *Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019), the chair of a county's board of supervisors created a Facebook Page for her position, in addition to her personal and campaign profiles. *Id.* at 673. The chair's Facebook Page was designated as a "governmental official" page and was used to update her constituents on official county business. *Id*. at 673–74. The chair herself characterized the Facebook Page as her "county Facebook page" that would be used to "hear from Any [county] citizen on Any issues, request, criticism, complements or just your thoughts." *Id.* at 673.Thus, in light of the evidence, the Fourth Circuit concluded that the chair acted under color of state law when she blocked the plaintiffs from the account. *Id.* at 680.

In light of *Trump and Davison*, it is clear to the Court that Brown's social media accounts cannot be fairly attributable to the state. Russell's single contention for state action is the fact that that Brown "identifies herself on one or more of her Social Media Pages as a Jefferson Family Court Judge . . ." [R. 1, ¶ 30]. She provides no support that suggests this is sufficient to

15

demonstrate state action. Further, she fails to allege that the accounts are accessible to the general public without limits or that that the general public is allowed to communicate with Brown via these accounts. She provides no support as to how Brown describes and uses her accounts. She offers no examples as to how others regard and treat the accounts. Finally, she makes no allegations that Brown's accounts deploy interactive features open to the public that make public interaction a prominent feature of the account. *See Trump*, 928 F.3d at 236; *see generally Davison*, 912 F.3d at 682–84. Thus, Russell has failed to allege a constitutional violation by a state actor, and her claim fails as a matter of law.

**IV.     Conclusion**

Pursuant to the *Rooker-Feldman* doctrine, the Court lacks jurisdiction to hear Russell's claim. Assuming jurisdiction existed, the Court would abstain from hearing this matter via the *Younger* abstention doctrine. Finally, Russell's First Amendment claim is dismissed for failure to allege a constitutional violation.

Accordingly, it is **HEREBY ORDERED** as follows:

1. Defendant's Motion To Dismiss, [R. 7], is **GRANTED.**

2. Plaintiff's Complaint, [R. 1], is **DISMISSED**, and this action is **STRICKEN** from the Court's docket.

This the 30th day of September, 2021.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF KENTUCKY